IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
IN KNOXVILLE

JOSHUA JAMES MANN, and WIFE,
TERRIE MANN

      Plaintiffs,

VS.

CITY OF OAK RIDGE, TENNESSEE,
RIDGEVIEW PSYCHIATRIC HOSPITAL
AND CENTER, INC. d/b/a RIDGEVIEW
BEHAVIORAL HEALTH SERVICES,
SALLEE YARBORO, and JOHN DOES 1-5

      Defendants.

Docket No.

_____

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, Plaintiffs Joshua James Mann and Terrie Mann, individually, by and through the undersigned counsel and file this civil action against Defendants City of Oak Ridge, Tennessee, Ridgeview Psychiatric Hospital and Center, Inc., d/b/a Ridgeview Behavioral Health Services, Sallee Yarboro, and John Does 1-5, and, for grounds in support thereof, would show unto the Court as follows:

## I.

## PARTIES

1.    Plaintiff Joshua James Mann is an adult resident citizen of the State of Nevada, residing at 6600 Rolling Meadows Drive, Unit 2312, Sparks, Nevada 89436.

2.    Plaintiff Terrie Mann is an adult resident citizen of the State of Nevada, residing at 6600 Rolling Meadows Drive, Unit 2312, Sparks, Nevada 89436.

3.      Defendant City of Oak Ridge, Tennessee, is a municipality and the county seat of Anderson County, Tennessee. It operates under the laws of the State of Tennessee, and, as such, is a governmental municipal entity of the State of Tennessee pursuant to Tenn. Code Ann § 29-20-107. The City of Oak Ridge may be served with process on its attorney, Tammy M. Dunn, at 200 South Tulane Avenue, Oak Ridge, TN 37830.

4.      Defendant Ridgeview Psychiatric Hospital and Center, Inc. d/b/a Ridgeview Behavioral Health Services is a nonprofit organization with its principal place of business located at 240 West Tyrone Road, Oak Ridge, TN, 37830. Service of process may be made upon its registered agent, Brian D. Buck, at 240 West Tyrone Road, Oak Ridge, TN 37830.

5.      Defendant Sallee Yarboro is an adult resident of Anderson County, Tennessee, whose residence address is 100 Oneida Lane, Oak Ridge, Tennessee 37830.

6.      Defendants John Doe 1-5 are unidentified adults acting or representing themselves as agents or employees with the City of Oak Ridge and unidentified adults acting or representing themselves as agents or employees of Ridgeview.

## II.

## JURISDICTION

7.      This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and all Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      The incident which gives rise to this cause of action occurred within this jurisdiction and within one year of the filing of this Complaint. The approximate location of the

incident which gives rise to this cause of action is the westbound lane after the intersection of Oak Ridge Turnpike and California Avenue in Oak Ridge, TN 37830.

9.      Pertinent sections of the Tennessee Government Tort Liabilities Act in Tenn. Code Ann. § 29-20-101 *et. seq.* (hereinafter "TGTLA") state that "[t]he Circuit Court shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury...." Tenn. Code Ann. § 29-20-307. The TGTLA also states that the proper venue for actions brought under the TGTLA is either "in the county in which such governmental entity is located or in the county in which the incident occurred from which the cause of action arises." Tenn. Code Ann. § 29-20-308. TGTLA further requires that "[w]hen immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter." Tenn. Code Ann. § 29-20-201(b).

10.      However, "it is well established that 'no [state] statute limitation of suability can defeat a jurisdiction given by the constitution.' *Lincoln County v. Luning*, 133 U.S. 529, 10 S. Ct. 363, 33 L. Ed. 766 (1890). *Malone v. Fayette Cty.*, 86 F. Supp. 2d 797, 801 (W.D. Tenn. 2000). "For example, in *Metaljan v. Memphis-Shelby County Airport Authority*, a case also involving the TGTLA, the Court held that the exclusive jurisdiction and venue provisions of the TGTLA did not defeat federal court jurisdiction in that case. See *Metaljan*, 752 F. Supp. 834, 836-37 (W.D.Tenn.1990)." *Malone v. Fayette Cty.*, 86 F. Supp. 2d 797, 801 (W.D. Tenn. 2000).

11.      Therefore, jurisdiction has been properly established in this Court.

## III.

## VENUE

12.     Venue in this cause is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial alleged act or omission giving rise to Plaintiffs' Complaint occurred in the judicial district of the United States District for the Eastern District of Tennessee, Knoxville Division.

13.     Venue for a trial on the merits in the United States District Court for the Eastern District of Tennessee, Knoxville Division, is proper because the Defendants' conduct which constitutes the basis for this cause of action occurred in Anderson County, Tennessee.

14.     Therefore, both jurisdiction and venue have been properly established in this Court.

## IV.

## FACTS

15.     Plaintiffs adopt and herein incorporate by reference each and every allegation as set forth heretofore.

16.     On October 30, 2021, a race was to take place in the City of Oak Ridge, which is near Knoxville. The race was being put on by Defendant Ridgeview Psychiatric Hospital and Center, Inc., d/b/a Ridgeview Behavioral Health Services (hereinafter "Ridgeview"). Michael Yates (hereinafter "Mr. Yates") was employed as Director of Business Development for Ridgeview. At all times material, Mr. Yates represented himself as the Race Director for this race.

17.     The name of the race was the Oak Ridge Halloween Classic 5K. The race was to begin at 8:30 a.m. on that October 30th. This race was to take place on what was called the

Jackson Square Race Route. A Map of this race route is attached hereto as **EXHIBIT A**, 2021 Jackson Square Race Route Map. See also **EXHIBIT B**, 2021 Race Application.

18.     The Jackson Square Race Route required road security with a minimum of thirty (30) volunteers and five (5) Oak Ridge Police Officers. See **EXHIBIT C**,  Road Race Informational Packet. See also **EXHIBIT B**, 2021 Race Application.

19.     In order for Ridgeview to obtain permission from the City of Oak Ridge to hold the race, Ridgeview was required to complete an application, which Ridgeview did through Mr. Yates earlier that year on June 9, 2021.See **EXHIBIT B**, 2021 Race Application. Mr. Yates signed the application and, on behalf of Ridgeview, agreed to follow the policies and procedures set forth in the Road Race Information Packet and the Road Race Application. See **EXHIBIT B**, 2021 Race Application. See also **EXHIBIT C**, Road Race Informational Packet. Mr. Yates, on behalf of Defendant Ridgeview, wrote on the application that there would be 150 runners in the race. See **EXHIBIT B**, 2021 Race Application.

20.     At all times material, Mr. Yates was the agent of Defendant Ridgeview, was acting on Defendant Ridgeview's business, and was acting within the scope of his employment by Ridgeview.

21.     Defendant Ridgeview was responsible for obtaining all required permits for the event, according to the language of the Road Race Application. But, Ridgeview, failed to obtain all of the required permits.  Further, Ridgeview failed to obtain the City's official approval for this particular race. *Id.*

22.     Defendant Ridgeview's failure to obtain all the City's required permits and approvals for its races has been occurring repeatedly from at least 2017.

23.     Ridgeway failed to receive approval of the Officer Request Form that he had completed. *Id.*, "Application Page 5." And Ridgeway failed to make payment to the City of Oak Ridge Police Department for the procurement of the required five (5) police officers for the race. *Id.*, "Application Page 3." Further, the Temporary Parade Permit was never issued to Ridgeway. *Id.*, "Application Page 4."

24.     Ridgeview did complete the Request for Temporary Use of Traffic Control Equipment. However, the order placed was for traffic cones only – 100 of them at $1 per cone. See **EXHIBIT B**, 2021 Race Application, "Application Page 6." Ridgeview knew that the race route included the partial closure of the Oak Ridge Turnpike at, or near, the intersection with California Avenue where the speed limit on the Oak Ridge Turnpike at that location was 45 miles per hour. Ridgway knew that barrels, which are much larger and heavier than cones, could have been requested at the cost of $5 per barrel. Such barrels could have been positioned on the roadway to completely block off, or barricade it, which could have prevented a motorist from entering the roadway.

25.     According to the Road Race Application and the Road Race Information Packet completed on June 9, 2021, Ridgeview was required to attend "the next scheduled meeting of the City of Oak Ridge Special Event Committee to "select a race course, develop a cost for city services (cones, barrels, police, etc.), discuss race plans, volunteer needs, and other arrangements." See **EXHIBIT C**, Road Race Informational Packet. See also **EXHIBIT B**, 2021 Race Application. However, according to the public minutes and meetings of the City of Oak Ridge from June 10, 2021, through October 30, 2021, Ridgeview, through Mr. Yates or anyone else, failed to attend any of the meetings; and nothing regarding the subject race is listed on the agenda of those meetings or included in the minutes of those meetings.

26. The Race Application Approval was not signed by any of the committee members of the City of Oak Ridge's Police Department, Public Works, Electrical Department, Recreation and Parks Department, and Fire Department, nor was it signed by the director of the Recreation and Parks Department. See **EXHIBIT B**, 2021 Race Application, Page No. 11.

27. Ridgeview was required to obtain Event Liability Insurance and to list the City of Oak Ridge as an Additional Insured Party on the policy with a minimum amount of $1,000,000.00 and Certificate of Insurance was to be presented to the Recreation and Parks Department at least fourteen (14) days prior to the race. See **EXHIBIT C**, Road Race Informational Packet. See also **EXHIBIT B**, 2021 Race Application. However, the Certificate of Liability Insurance with effective dates of July 1, 2021, through July 1, 2022, that was submitted to the City of Oak Ridge only listed Ridgeview as the insured. Specifically, the City of Oak Ridge was not listed as an additional insured, which was required for any race being held on property owned or leased by the City of Oak Ridge.

28. The Road Race Information Packet sets forth that "Responsible volunteers (age 18+) will be required at all cross streets/intersections/congested areas along the course and must be in reflective safety vests." See **EXHIBIT C**, Road Race Informational Packet.

29. The Road Race Information Packet also provides that "Oak Ridge Police Officers will be required at all signalized intersections and other critical points along the course as determined by the ORPD based on anticipated traffic flow, day of the week and activity levels within the race area." See **EXHIBIT C**, Road Race Informational Packet.

30. Meanwhile, in October of 2021, Plaintiff Joshua Mann was a Technical Sergeant in the Nevada Air National Guard. During this time, he went to Knoxville, Tennessee, in order to attend a Non-Commissioned Officer military leadership training academy ("NCOT"). Plaintiff

Mann did this so that he may further his military career. This academy was to last three to four weeks. There were approximately twelve people from across the United States who were participating in this particular NCOT academy.

31. One way for these academy participants to fulfill, in part, their leadership training requirements was for them to acquire community service hours, such as by volunteering to assist in a community race.

32. These trainees learned of the Oak Ridge Halloween Classic 5K race that was to take place on the morning of October 30, 2021, in the nearby City of Oak Ridge, and that they would be able to obtain community service hours by volunteering at the race.

33. Mr. Yates, who, again, was the Director of Business Development for Ridgeview and who referred to himself as the Race Director, was the point of contact for the event. One of the NCOT class members, Seth Banks, contacted Mr. Yates to request that he and his fellow NCOT class members be allowed to volunteer for the race. Mr. Yates granted their request and told Mr. Banks when and where he and the other NCOTs were to meet with him (Mr. Yates) on the morning of, and prior to, the race, which was, as stated heretofore, set to start at 8:30 a.m. on October 30, 2021.

34. Mr. Yates, on behalf of Ridgeview, sent NCOT candidate Seth Banks basic information regarding volunteering for the 5K race.

35. Plaintiff Mann and the other NCOTs arrived on time and at the location, which was a parking lot, as instructed by Mr. Yates. There, Mr. Yates met with the NCOTs for three to four minutes. No safety vests were provided to the NCOT candidates. No other safety gear or equipment was provided to the NCOTs candidates. However, Mr. Yates was wearing a safety vest.

36.     Mr. Yates then instructed some of the NCOT candidates, including Plaintiff Mann, to get into the bed of Mr. Yates' pickup truck, which they did do, to begin placing signs and cones on Oak Ridge Turnpike.

37.     Plaintiff Mann got out of the bed of Mr. Yates' truck and assisted with placing two orange-colored signs on the right-hand lane of Oak Ridge Turnpike, prior to the intersection with California Avenue.

38.     Mr. Yates drove them to the intersection of California Avenue and the Oak Ridge Turnpike. The race route was being set up, so that the runners in the race would run on California Avenue and then turn onto the right-hand lane of the two lanes on the Oak Ridge Turnpike and run there in a westerly direction.

39.     Mr. Yates instructed Plaintiff Mann and the others with him to assist with the closure of the right-hand lane of the Oak Ridge Turnpike (westerly traffic on that one lane) and the placement of cones along the inside edge of that lane on the Oak Ridge Turnpike.

40.     Mr. Yates was driving his truck slowly in front of Plaintiff Mann and two other NCOT candidates, Seth Banks, and James Snell, who were walking behind Mr. Yates' truck and were placing cones that were in Mr. Yates' vehicle along the inside edge of the right-hand lane of the Oak Ridge Turnpike. The purpose was to block off the right-hand lane of the turnpike for runners who would be running there. At all times material, Plaintiff Mann, Mr. Banks, and Mr. Snell were in the right-hand lane of the turnpike, and they were walking in a westerly direction.

41.     A vehicle being driven by Defendant Sallee Yarboro, who was driving westbound on the Oak Ridge Turnpike and was located east of Plaintiff Mann, without signal or warning drove through the cones set up near the intersection of California Avenue and the Oak Ridge

Turnpike and proceeded to strike Plaintiff Mann, who was in the right-hand lane of the Oak

Ridge Turnpike and was walking in a westerly direction at this time.

42.     Plaintiff Mann, who never saw nor heard Defendant Yarboro's vehicle, sustained

serious bodily injuries as a result of being struck by the vehicle.

43.     As a result of Plaintiff Mann's serious bodily injuries, which have affected him

physically and emotionally, his wife Plaintiff Terri Mann, experienced loss of consortium.

**V.**

**<u>CAUSES OF ACTION</u>**

**A.     Defendant Sallee Yarboro**

**<u>Count 1</u>**

**<u>Negligence</u>**

44.     Plaintiffs adopt and herein incorporate by reference each and every allegation as

set forth above.

45.     Defendant Sallee Yarboro, at all times material, owed a duty to those on the Oak

Ridge Turnpike to exercise reasonable and ordinary care in the operation and maintenance of her

motor vehicle, to prevent and avoid accidents or injury, and to operate her vehicle in accordance

with the laws of the State of Tennessee.

46.     Defendant Yarboro breached her duties by crashing the vehicle she was driving

into Plaintiff Joshua Mann while he was walking inside the right-hand land of the Oak Ridge

Turnpike which had been blocked off from traffic.

47.     The crash was caused by the negligence of Defendant Yarboro for that, among

other acts, Defendant Yarboro, at all times material:

    a.     Failed to maintain her vehicle under proper and reasonable control;

b. Failed to maintain a proper lookout for pedestrians on the roadway;

c. Failed to operate her vehicle at an appropriate speed for the existing conditions;

d. Failed to bring the vehicle under control and to stop when there was sufficient time and distance to do so before running over Plaintiff Mann;

e. Failed to warn Plaintiff Mann with the use of her horn;

f. Failed to observe and heed to the traffic signs and cones on the roadway; and

g. Committed other acts of negligence that will be proven at the trial of this cause.

48. As a direct and proximate result of the negligence of Defendant Yarboro as set forth heretofore, both Plaintiffs named in this Complaint sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 2

### Negligence Per Se—Violations of Tennessee Code Annotated

49. Plaintiffs adopt and herein incorporate by reference each and every allegation as set forth above.

50. At all times material, Defendant Yarboro was operating her vehicle in violation of the following sections of the Tennessee Code Annotated, constituting negligence per se:

a. Tenn. Code Ann. § 55-8-115, "Driving on the right side of the roadway"

b. Tenn. Code Ann. § 55-8-123, "Driving on roadways laned for traffic"

c. Tenn. Code Ann. § 55-8-136, "Drivers to Exercise Due Care"

d. Tenn. Code Ann. § 55-8-197, "Serious Bodily Injury"

51. As a direct and proximate result of the negligence of Defendant Yarboro as set forth heretofore, both Plaintiffs named in this Complaint sustained damages, including, but not

limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

**Count 3**

**Negligence Per Se—Duty of Care to Pedestrians Pursuant to
the City of Oak Ridge Traffic Control Ordinances**

52.     Plaintiffs adopt and herein incorporate by reference each and every allegation as set forth above.

53.     Defendant Yarboro owed a statutory duty of care to Plaintiff Joshua Mann pursuant to the City of Oak Ridge Traffic Control Ordinances, Chapter 8 THE OAK RIDGE TRAFFIC CONTROL ORDINANCES CHAPTER, 15-810 which provides that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary . . . ."

54.     Defendant Yarboro neglected to sound the horn pursuant to the Ordinance to alert the pedestrians of her oncoming vehicle.

55.     As a direct and proximate result of the negligence of Defendant Yarboro as set forth heretofore, both Plaintiffs named in this Complaint sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

**Count 4**

**Loss of Consortium**

56.     Plaintiffs adopt and herein incorporate by reference each and every allegation as set forth above.

57.     At the time of the accident complained of in the Plaintiffs' Complaint, the Plaintiffs were married. And they continue to be married.

58.     That as a result of the wrongful and negligent acts and or gross negligent acts of Defendant Yarboro, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

59.     That all the injuries and damages were directly and proximately caused by the negligence and or gross negligence of Defendant Sallee Yarboro.

**B.     Defendant Ridgeview Psychiatric Hospital and Center, Inc. d/b/a Ridgeview Behavioral Health Services ("Ridgeview") and John Doe 1-5**

## Count 1

## Negligence

60.     Defendant Ridgeview owed a duty to those volunteering at the race to exercise reasonable and ordinary care in providing them with a safe place for them to perform their services, including those such as Plaintiff Joshua Mann, on the Oak Ridge Turnpike near the intersection with California Avenue.

61.     Defendant Ridgeview breached its duty, through its acts and omissions, by creating a terribly unsafe condition for the race volunteers, which included, but is not limited to, the following:

  a.     Failing to provide safety vests to Plaintiff Joshua Mann and other volunteers;

  b.     Failing to properly block off the right-hand lane of the westbound portion of the Oak Ridge Turnpike at, or near to, the intersection with California

Avenue, where there was an active amount of traffic and the speed limit there was 45 miles per hour, so to prevent vehicles, such as the one driven by Defendant Sallee Yarboro, from entering that right-hand lane and crashing into the volunteers there such as Plaintiff Joshua Mann;

c.    Failing to procure the services of the required five (5) police officers for the race, at least one of whom should have been working the dangerous location at, or near, the intersection of California Avenue and the Oak Ridge Turnpike;

d.    Repeatedly failing to obtain the City's proper approval and authority before beginning the 5K races.

e.    Committing other acts of negligence that will be proven at the trial of this cause.

62.    As a direct and proximate result of the negligence of Defendant Ridgeview as set forth heretofore, Plaintiff Joshua Mann sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 2

## Gross Negligence

63.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

64.     The repeated actions and omissions of Defendant Ridgeview, as described above, constitute gross negligence, which evidences a willful, wanton, and reckless disregard for the safety of Plaintiff Joshua Mann.

65.     Defendant Ridgeview's willful, wanton, and reckless disregard for the safety of Plaintiff Joshua Mann was a direct, proximate, and contributing cause of the damages Plaintiff Joshua Mann sustained in the subject accident.

## Count 3

## Negligence Per Se

66.     Plaintiffs re-allege and incorporate by reference the paragraphs of this Complaint as if fully set forth herein.

67.     Defendant Ridgeview did not have the City's authorization to close a lane on Oak Ridge Turnpike, thus violating Tenn. Code Ann. § 55-8-113(a) "No person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device that purports to be or is an imitation of or resembles an official traffic control device or railroad sign or signal, or that attempts to direct the movement of traffic . . .."

68.     Defendant Ridgeview did not have the City's authorization to close a lane on Oak Ridge Highway, thus violating CHAPTER 4 TRAFFIC CONTROL DEVICES 15-406. Unauthorized signs, signals, etc. (1) No person shall place, maintain or display, upon or in view of any street, any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device or railroad sign or signal, or which attempts to direct the movements of traffic . . . .."

69.     As a direct and proximate result of the negligence per se of Defendant Ridgeview as set forth heretofore, Plaintiff Joshua Mann sustained damages, including, but not limited to,

serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 4

## Respondeat Superior

70.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71.    Michael Yates and others were, at all times material, the agents/employees of Defendant Ridgeview, were acting on Defendant Ridgeview's business, and were acting within the scope of their employment by Ridgeview.

72.     Consequently, Defendant Ridgeview is responsible for and liable for all of the actions and inactions of Mr. Yates and other agents/employees of Ridgeview.

73.    As a direct and proximate result of the gross negligence of Defendant Ridgeview's agents/employees, Plaintiff Joshua Mann and his wife, Plaintiff Terrie Mann, have sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 5

## Loss of Consortium

74.    Plaintiffs adopt and herein incorporate by reference each and every allegation as set forth above.

75. At the time of the accident complained of in the Plaintiffs' Complaint, the Plaintiffs were married. And they continue to be married.

76. That as a direct result of the wrongful and negligent acts and or gross negligent acts of Defendant Ridgeview, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

77. That all the injuries and damages were directly and proximately caused by the negligence and or gross negligence of Defendant Ridgeview.

### C. Defendant City of Oak Ridge and John Doe 1-5

### Count 1

### Negligence

78. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

79. Defendant City of Oak Ridge owed a duty of reasonable and ordinary care to those in the City to follow its own policies, procedures, manuals, protocols, and guidelines regarding the approval of events such as the subject Oak Ridge Halloween Classic 5K that was to be held on October 30, 2021.

80. Defendant City of Oak Ridge was negligent when it breached its duty by allowing this race to go forward, which led to the volunteering by Plaintiff Joshua Mann and others, in violation of the City's policies, procedures, manuals, protocols and guidelines, as Defendant Ridgeview, which was putting on the race, including, but not limited to, failing to do the following:

a    Obtain all of the required permits;

b.      Obtain the City's official approval for this particular race;

c.      Receive approval of the Officer Request Form;

d.      Receive the required Temporary Parade Permit;

e.      Attend the scheduled meeting of the City of Oak Ridge Special Event to select race route, develop a cost for city services, discuss race plans, volunteer needs, and other arrangements;

f.      List the City of Oak Ridge as an insured on the Event Liability Insurance

g.      Arrange for the required police officers to work the race and, in particular, work the location where the subject crash took place.

81.     As a direct and proximate result of the negligence of Defendants as set forth heretofore, Plaintiff Joshua Mann sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 2

## Negligence Per Se

82.     Plaintiffs re-allege and incorporate by reference the paragraphs of this Complaint as if fully set forth herein.

83.     Defendant John Doe did not have authorization to close a lane or authorize Defendant Ridgeview to close the lane on Oak Ridge Turnpike, thus violating Tenn. Code Ann. § 55-8-113(a) "No person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device that purports to be or is an imitation of or resembles

an official traffic control device or railroad sign or signal, or that attempts to direct the movement of traffic . . ."

84.     Defendant John Doe did not have authorization to close a lane or authorize Defendant Ridgeview to close the lane, thus violating CHAPTER 4 TRAFFIC CONTROL DEVICES 15-406.  Unauthorized signs, signals, etc.  (1)  No person shall place, maintain or display, upon or in view of any street, any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic-control device or railroad sign or signal, or which attempts to direct the movements of traffic . . . ."

85.     As a direct and proximate result of the negligence per se of Defendant Ridgeview as set forth heretofore, Plaintiff Joshua Mann sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 3

## Respondeat Superior

86.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

87.     At all times material, there were people involved in the actions and omissions set forth against Defendant City of Oak Ridge who were the agents/employees of the City, who were acting on the City's business, and who were acting within the scope of their employment by the City.

88.     Consequently, Defendant City of Oak Ridge is responsible for and liable for all of the actions and inactions of those other agents/employees of the city that is the basis for the claims against the city.

89.     As a direct and proximate result of the negligence of Defendant City of Oak Ridge's agents/employees, Plaintiff Joshua Mann and his wife, Plaintiff Terrie Mann, have sustained damages, including, but not limited to, serious physical injuries, past, present, and future pain and suffering, past present and future medical expenses, lost wages, loss of wage-earning capacity (loss of future wages), and other damages that will be proven at the trial of this matter.

## Count 4

## Loss of Consortium

90.     Plaintiffs adopt and herein incorporate by reference each and every allegation as set forth above.

91.     At the time of the accident complained of in the Plaintiffs' Complaint, the Plaintiffs were married.  And they continue to be married.

92.     That as a direct result of the wrongful and negligent acts and or gross negligent acts of Defendant City of Oak Ridge, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

93.     That all the injuries and damages were directly and proximately caused by the negligence and or gross negligence of Defendant City of Oak Ridge.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

1. That this Complaint be served upon all Defendants and that they be required to answer the same; and

2. That judgment against these Defendants, in the amount of Five Million Dollars ($5,000,000.00), plus costs, pre-judgment interest, post-judgment interest, and any other costs this Court deems appropriate for injuries and damages, including but not limited to, medical expenses incurred, and future medical expenses, lost wages, pain and suffering, and for any other damages that are related to the accident; and

3. For a judgment against Defendant Ridgeview for punitive damages in the amount of Ten Million Dollars ($10,000,000.00) or an amount established by the evidence, as warranted for the egregious nature of the acts and omission resulting in the gross negligence committed; and

4. For all such further relief, both general and specific, to which Plaintiffs may be entitled under the premises: and

5. For all discretionary costs to be taxed to Defendants.

A trial by jury is demanded in the instant matter.

Respectfully Submitted, on this 29th day of October 2022.

JOSHUA JAMES MANN and TERRIE MANN, PLAINTIFFS


By: /s/ Mital D. Patel, Esq.
Mital D. Patel, Esq. (TN BPR No. 026889)
Julie D. Eisenhower, Esq. (TN BPR No. 027777)
217 S. Peters Road
Knoxville, Tennessee 37923
865-217-1154 office
865-217-1103 fax
mital@triamicuslaw.com
julie@triamicuslaw.com